UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| BENJERMIN HECKER,<br><br>               Plaintiff,<br><br>   vs.<br><br>MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY;<br><br>             Defendant. | CIV. NO. 24-00169 LEK-RT |

**ORDER GRANTING IN PART PLAINTIFF'S APPEAL;**
**REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION;**
**AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

    Before the Court is Plaintiff Benjamin Hecker's ("Plaintiff") appeal from both Administrative Law Judge Ruxana Meyer's ("ALJ") January 4, 2024 Decision and the Appeals Council's denial of Plaintiff's request for review of the ALJ's Decision ("Appeal").[1] Plaintiff's Opening Brief was filed on July 15, 2024. [Dkt. no. 8.] Defendant Martin O'Malley,

---

[1] The Decision, including the Notice of Decision – Unfavorable and the List of Exhibits, is available in the Administrative Record Dated June 5, 2024 ("AR") at 14-33. [AR, filed 6/14/24 (dkt. no. 6), Documents Related to Administrative Process Including Transcript of Oral Hearing, if applicable (dkt. no. 6-3) at PageID.6-51.] On January 12, 2024, Plaintiff requested review of the Decision. [Exh. 16B, AR at 182-83 (dkt. no. 6-5 at PageID.202-03) (request for review of Decision).] The Appeals Council denied Plaintiff's request for review on February 16, 2024, making the ALJ's Decision the final decision of Defendant Martin O'Malley, Commissioner of Social Security ("the Commissioner"). [Notice of Appeals Council Action ("AC Notice"), AR at 1-3 (dkt. no. 6-3 at PageID.19-21).]

Commissioner of Social Security ("the Commissioner") filed the Answering Brief on August 9, 2024, and Plaintiff filed a Reply Brief on August 28, 2024. [Dkt. nos. 11, 12.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). For the reasons set forth below, Plaintiff's Appeal is granted insofar as the ALJ's Decision is reversed and the case is remanded to the ALJ for further proceedings consistent with the instant Order.

## BACKGROUND

Plaintiff filed a Title II application for disability and disability insurance benefits, alleging he was disabled beginning April 30, 2022. Plaintiff's claim was denied, initially and on reconsideration. On August 8, 2022, Plaintiff filed a written request for a hearing. On November 1, 2023, the ALJ held a hearing. Plaintiff was represented at the hearing by his current counsel, and vocational expert Ronald Joseph Fleck ("VE") also appeared. [Decision, AR at 17 (dkt. no. 6-3 at PageID.35).]

At the hearing, Plaintiff testified that he suffers from depression, anxiety, and panic attacks. See Social Security Administration Office of Hearings Operations: Transcript of 11/1/23 hearing ("Hrg. Trans."), AR at 40-41, 53-60 (dkt. no. 6-

2

3 at PageID.58-59, 71-78). Plaintiff testified that he has panic attacks at unpredictable times, often in response to relatively inconsequential triggers, such as trying to find his keys. The attacks last for one to two hours and occur once or twice a month. [Id. at 40-41 (dkt. no. 6-3 at PageID.58-59).] He takes Lorazepam once or twice a month, when he has a panic attack or anxiety. [Id. at 40 (dkt. no. 6-3 at PageID.58).] Plaintiff testified that he has been taking Lorazepam and other medications, seeing a psychiatrist regularly, seeing a therapist individually every week for about an hour, and attending group counselling. [Id. at 53-55 (dkt. no. 6-3 at PageID.71-73).] Plaintiff testified that he had to respond to a stressful emergency in the course of his work in November 2021, which continued in the ensuring months. [Id. at 56-57 (dkt. no. 6-3 at PageID.74-75).]

In April 2022, his stress levels became debilitating, where he started having panic attacks consistently, anxiety, depression, and workplace outbursts. [Id. at 56-59 (dkt. no. 6-3 at PageID.74-77).] He testified he now consistently has panic attacks "when there is nothing going on," and he becomes confused and disoriented, and his heart races. See id. at 57 (dkt. no. 6-3 at PageID.75). Plaintiff testified that his panic attacks are hard to predict and occur on a consistent basis. [Id. at 58 (dkt. no. 6-3 at PageID.76).] Plaintiff testified

3

that his ability to engage in social situations is severely
limited for the next day or two after a panic attack because he
is mentally and physically exhausted. [Id. at 59 (dkt. no. 6-3
at PageID.77).] Plaintiff testified that some of the medications
he takes make it difficult to concentrate or understand a
conversation, and he gets confused. [Id. at 60, 62-63 (dkt. no.
6-3 at PageID.78, 80-81).]

Plaintiff also testified to his physical limitations.
In response to the question, "How much weight can you
comfortably lift and carry around?" Plaintiff answered:

> Right now? Like nothing. My back is really sore,
> but I -- it -- I can't -- I mean, if -- ten --
> ten pounds -- five, ten pounds I might be able to
> lift. But my doctor, she just -- Dr. McKinney, I
> had just saw here last - - or yeah last week with
> my back. And she offered me a cane. I don't know
> if I'll use it. I mean, but it -- my back, I have
> bulging disks and tears. I mean, I'm not 19, 20
> anymore. I'm not going to go out there and
> freaking, you know, do heavy construction or
> anything anymore. I can't do any of that stuff.

[Id. at 61-62 (dkt. no. 6-3 at PageID.79-80).] Plaintiff also
testified to his issues with walking as follows: "Yeah, well,
it's more of standing up and getting down where my back -- my
legs feel like they're giving out to me." [Id. at 62 (dkt.
no. 6-3 at PageID.80).] Plaintiff explained that was the reason
why his doctor wanted him to have a cane. [Id.] As to problems
with reaching, handling, fingering or feeling with his right or
left arm, Plaintiff testified he has problems in his right hand.

4

Plaintiffs stated: "I had an injury where I had my tendons -- I only have like 40% of my grip with my right hand. That was when I was in the military. I was injured with that. And that should be on my medical records." [Id. at 63 (dkt. no. 6-3 at PageID.81).]

The VE testified about three hypothetical situations. In the ALJ's first hypothetical, the ALJ posed a hypothetical of an individual with the residual functional capacity ("RFC") who can do work at all exertional levels, that does not involve contact with the general public, and can do simple, routine tasks involving no more than frequent contact with coworkers or supervisors. The VE responded that such an individual could perform the jobs of fruit grader, cotton classer aide, and quilting machine operator. [Id. at 64-66 (dkt. no. 6-3 at PageID.82-84).] The ALJ posed a second hypothetical with the same limitations as well as the additional limitation of no more than frequent reaching, handling, fingering and feeling with the bilateral upper extremities. The VE responded this would erode the job numbers by twenty-five percent for the food grader, quilting machine operator, and cotton classer aide jobs. [Id. at 66 (dkt. no. 6-3 at PageID.84).] The ALJ inquired if any other jobs would exist, and the VE testified there would also be work as an order caller, office helper, and mail clerk. [Id. at 66-67 (dkt. no. 6-3 at PageID.84-85).] The final hypothetical the ALJ

posed was the same limitations as the second hypothetical, and the additional limitation that the individual would incur two absences per month, to which the VE responded there would be work with two absences. [Id. at 67-68 (dkt. no. 6-3 at PageID.85-86).] The VE also testified that there would be no jobs available if the individual missed more than two days of work per month. [AR at 68 (dkt. no. 6-3 at PageID.86).]

In the Decision, the ALJ found that Plaintiff was insured, for purposes of the Social Security Act, through December 31, 2027. [Decision, AR at 19 (dkt. no. 6-3 at PageID.37).] At step one of the five-step sequential analysis to determine whether a claimant is disabled, the ALJ found that Plaintiff had not engaged in substantial gainful employment since April 30, 2022, the alleged onset date. [Id.]

At step two, the ALJ found that Plaintiff had the following severe impairments: "major depressive disorder; generalized anxiety disorder; adjustment disorder; [and] history of alcohol use disorder." [Id. (citing 20 CFR 404.1520(c)).] The ALJ also noted Plaintiff had a number of other impairments that were not severe, including "obesity, hyperlipidemia, esophageal disorder, obstructive sleep apnea, degenerative disc disease and degenerative joint disease of the left shoulder." [Id. at 20 (dkt. no. 6-3 at PageID.38).] The ALJ determined these non-severe impairments "do not have more than a minimal effect on

6

the ability to work" because Plaintiff was being treated with

medication for many of the conditions, and there were no

indications of limited functioning for some of the conditions.

[Id. (citations omitted).] Specifically, the ALJ stated:

> his obesity was generally noted as borderline
> with body mass index (BMI) of 30 to 31 with no
> indications it limited his functioning as
> considered under 19-2p (Exhibits 1F/6; 7F/70,
> 319[2]). His hyperlipidemia was noted as treated
> with Crestor with good heart function
> (Exhibit 7F/203, 232-233, 276). His esophageal
> disorder was treated with Omeprazole with no
> indications of complications or limitations
> (Exhibits 1F/188-191; 7F/277). His obstructive
> sleep apnea was noted as mild with him told to
> use a CPAP machine and given Fluticasone to
> improve breathing during use (Exhibits 1F/192-
> 194; 7F/41, 46, 202; 11F/88-90[3]). His
> degenerative disc disease was revealed in imaging
> in 2023 of only mild narrowing with the claimant
> noted by providers with good strength and a
> normal gait (Exhibits 1F/6; 7F/111, 133, 144,
> 330). Finally, his degenerative joint disease of
> the left shoulder was also noted with good
> strength and he was also noted with normal use of
> extremities with minimal arthrosis on imaging
> (Exhibits 1F/6; 3F/4; 7F/111, 144, 332-333[4]).

---

[2] Exhibit 1F is Veterans Affairs ("VA") Medical Center
Honolulu progress notes, dated from March 20, 2021 to June 2,
2022. [AR at 288-483 (dkt. no. 6-8 at PageID.31-506).] Exhibit
7F is VA Pacific Islands Health Care System ("VAPIHC") progress
notes, dated from August 15, 2022 to July 25, 2023. [AR at 564-
827 (dkt. no. 6-9 at PageID.588-851); AR at 828-917 (dkt. no. 6-
10 at PageID.853-942).]

[3] Exhibit 11F is VA hospital records, dated from
September 5, 1996 to September 3, 2023. [AR at 2222-779 (dkt.
no. 6-12 at PageID.2249-2806).]

[4] Exhibit 3F is VA Medical Center Honolulu progress notes
dated from June 2, 2022 to July 21, 2022. [AR at 501-51 (dkt.
no. 6-8 at PageID.524-574).]

[Id.]

At step three, the ALJ found that none of Plaintiff's impairments, either individually or in combination, met or equaled one of the impairments listed in Title 20 Code of Federal Regulations Part 404, Subpart P, Appendix 1. [Id. (citing 20 CFR 404.1520(d), 404.1525, and 404.1526).]

In the step four analysis, the ALJ found that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple routine tasks; he can do work that does not require more than frequent contact with coworkers and supervisors, and that does not involve contact with the general public.

[Id. at 21 (dkt. no. 6-3 at PageID.39).] The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's testimony about the intensity, persistence, and limiting effects of these symptoms was not consistent with the medical evidence and other evidence in the record. [Id. at 22 (dkt. no. 6-3 at PageID.40).]

Pertinent to the instant Appeal, in the Decision, the ALJ analyzed the medical opinion of Plaintiff's psychiatrist Drake Chinen, M.D. ("Dr. Chinen"). On October 4, 2022, Dr. Chinen provided a medical source statement regarding Plaintiff's diagnosis of recurrent major depression disorder and generalized

anxiety disorder, in which he opined that Plaintiff's condition
would cause more than three absences from work a month. Exh. 4F,
AR at 552-56 (dkt. no. 6-8 at PageID.575-79) (Mental Impairment
Medical Source Statement, dated 10/4/22 by Dr. Chinen) ("Dr.
Chinen's 10/4/22 Statement"); see also Exh. 5F, AR at 557-58
(dkt. no. 6-8 at PageID.580-81) (Additional Questions for
Healthcare Professional, dated 11/1/22, completed by Dr.
Chinen). Dr. Chinen also opined that Plaintiff would have marked
limitations precluding full-time employment that requires
functioning in certain areas, including "[p]erform[ing] at a
consistent pace without an unreasonable number and length of
rest periods," among other things. [Dr. Chinen's 10/4/22
Statement, AR at 554 (dkt. no. 6-8 at PageID.577).] Dr. Chinen
identified recurrent major depressive disorder and generalized
anxiety disorder as the medical or clinical findings that
support this assessment. [Id.] Dr. Chinen also provided a
medical source statement indicating similar limitations on June
13, 2023, and noting that symptoms of Plaintiff's major
depressive disorder and generalized anxiety disorder include
panic attacks. [Exh. 6F, AR at 559-63 (dkt. no. 6-8 at
PageID.582-86) (Mental Impairment Medical Source Statement,
dated 6/13/23 by Dr. Chinen) ("Dr. Chinen's 6/13/23
Statement").] The ALJ found Dr. Chinen's opinion that Plaintiff
"would have marked limitations, and miss[] more than three days

9

per month" unpersuasive. [Decision, AR at 25 (dkt. no. 6-3 at
PageID.43) (citing Exhibits 4F; 5F; 6F).]

The ALJ also considered the medical opinions of state
medical consultants Stacy Lau, M.D.; Wendy Matsuno, M.D.; Garret
Yanagi, Pd.D.; and Rodney Torigoe, Ph.D. [Id.] Ultimately, the
ALJ ruled that the RFC determination was "consistent with the
evidence," particularly treatment notes. [Id. at 26 (dkt. no. 6-
3 at PageID.44).] The ALJ found that Plaintiff is incapable of
performing any of his past relevant work. [Id. at 26 (dkt. no.
6-3 at PageID.44).]

At step five, the ALJ noted that Plaintiff was in the
"younger individual" category on the alleged onset date. [Id. at
27 (dkt. no. 6-3 at PageID.45) (citing 20 CFR 404.1563).]
Further, Plaintiff has at least a high school education. [Id.
(citing 20 CFR 404.1564).] The Decision does not address whether
Plaintiff has transferable job skills because it was not
material to the determination of disability because the ALJ
found Plaintiff "not disabled." [Id. (citing SSR 82-41; 20 CFR
Part 404, Subpart P, Appendix 2).]

The ALJ found that, based on Plaintiff's age,
education, work experience, and RFC, Plaintiff could make a
successful adjustment to the following jobs that exist in
significant numbers in the national economy: fruit-grader
operator, cotton classer aide, order caller, office helper, and

mail clerk. [Id.] The ALJ therefore found that Plaintiff was not under a disability from the alleged onset date, April 30, 2022, through the date of the Decision. [Id. at 29 (dkt. no. 6-3 at PageID.47) (citing 20 CFR 404.1520(g)).]

Plaintiff requested review of the ALJ's decision. [Exh. 16B, AR at 182-83 (dkt. no. 6-5 at PageID.202-03) (request for review of Decision).] As previously noted, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the Commissioner's final decision. [AC Notice, AR at 1-3 (dkt. no. 6-3 at PageID.19-21).]

In the instant Appeal, Plaintiff argues the Decision should be reversed because: (1) the ALJ failed to consider Plaintiff's physical limitations; (2) the ALJ failed to properly consider the supportability and consistency of Dr. Drake Chinen's medical opinions, (3) the ALJ failed to consider certain medical opinions at all, (4) the VE did not testify that Plaintiff could be an office helper, order caller, or mail clerk when asked about the RFC that the ALJ adopted; and (5) the ALJ erred in finding the VE's testimony reliable. [Opening Brief at 4-24.] Plaintiff asks the Court to reverse the ALJ's Decision that Plaintiff is not disabled and remand the matter for a new administrative hearing. [Id. at 25.]

## STANDARDS

### I.    Review of Social Security Decisions

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security." Concannon v. Saul, Civ. No. 19-00267-ACK-RT, 2020 WL 1492623, at *2 (D. Hawai`i Mar. 27, 2020), aff'd, No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021). The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). This Court applies the same standards that the Ninth Circuit applies in reviewing the Commissioner's decision.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error. Id. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted). In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole. Id. Where the record, considered as a whole, could support either affirmance or reversal, the district court must affirm the decision. Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016). To ensure a court

does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).

## II.  **Five-Step Analysis**

The following analysis applies when reviewing the denial of social security disability benefits.

> To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation. See 20 C.F.R. § 404.1520. The burden of proof is on the claimant at steps one through four. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities," Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (citing §§ 404.1571–404.1572, 416.971–416.975). At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," § 404.1520(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do basic work activities," § 404.1522(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

> At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of any of the impairments listed in the "Listing of Impairments" (referred to as the "listings"). See § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A). The listings describe impairments that are considered "to be severe

enough to prevent an individual from doing any gainful activity." § 404.1525(a). Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing." § 404.1525(c)(3). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (footnote omitted).[5] If an impairment does not meet a listing, it may nevertheless be "medically equivalent to a listed impairment" if the claimant's "symptoms, signs, and laboratory findings are at least equal in severity to" those of a listed impairment. § 404.1529(d)(3). But a claimant cannot base a claim of equivalence on symptoms alone. Even if the claimant alleges pain or other symptoms that makes the impairment more severe, the claimant's impairment does not medically equal a listed impairment unless the claimant has signs and laboratory findings that are equal in severity to those set forth in a listing. § 404.1529(d)(3). If a claimant's impairments meet or equal the criteria of a listing, the claimant is considered disabled. § 404.1520(d).

If the claimant does not meet or equal a listing, the ALJ proceeds to step four, where the ALJ assesses the claimant's residual functional capacity (RFC) to determine whether the claimant can perform past relevant work, § 404.1520(e), which is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it," § 404.1560(b)(1). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. § 404.1520(f).

---

[5] Sullivan has been superseded by statute on other grounds. See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir. 2013).

At step five, the burden shifts to the
agency to prove that "the claimant can perform a
significant number of other jobs in the national
economy." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 955
(9th Cir. 2002). To meet this burden, the ALJ may
rely on the Medical-Vocational Guidelines found
at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or on the
testimony of a vocational expert. <u>Tackett v.
Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999). "[A]
vocational expert or specialist may offer expert
opinion testimony in response to a hypothetical
question about whether a person with the physical
and mental limitations imposed by the claimant's
medical impairment(s) can meet the demands of the
claimant's previous work, either as the claimant
actually performed it or as generally performed
in the national economy." § 404.1560(b)(2). An
ALJ may also use "other resources, such as the
'Dictionary of Occupational Titles' and its
companion volumes and supplements, published by
the Department of Labor." <u>Id.</u>

Throughout the five-step evaluation, the ALJ
"is responsible for determining credibility,
resolving conflicts in medical testimony, and for
resolving ambiguities." <u>Andrews v. Shalala</u>, 53
F.3d 1035, 1039 (9th Cir. 1995).

<u>Ford v. Saul</u>, 950 F.3d 1141, 1148–49 (9th Cir. 2020) (some

alterations in <u>Ford</u>) (footnotes omitted).

## DISCUSSION

### I.   The ALJ's Failure to Discuss Plaintiff's Testimony Regarding His Physical Limitations

Plaintiff argues the ALJ failed to identify

Plaintiff's testimony regarding his physical limitations in

determining Plaintiff's RFC, and did not give any reasons for

rejecting this testimony, which was harmful error. [Opening

Brief at 9-12.] In response, the Commissioner argues the ALJ

adequately discussed Plaintiff's physical limitations at step
two by indicating they were effectively managed through
treatment, and the medical record demonstrated these limitations
did not cause significant work-related limitations. [Answering
Brief at 2-3.]

        The ALJ is required to address all limitations, both
severe and non-severe, in determining the claimant's RFC. See 20
C.F.R. § 404.1545(a)(2); see also Loader v. Berryhill, 722 F.
App'x 653, 654-55 (9th Cir. 2018) (finding that the ALJ erred by
failing to discuss a non-severe impairment when assessing the
claimant's RFC). A non-severe impairment can still limit a
claimant's ability to work, particularly when considered
collectively with other impairments. See Policy Interpretation
Ruling Titles II and XVI: Assessing Residual Functional Capacity
in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL
374184, at *5 (S.S.A. 1996). While an ALJ is required to
consider non-severe impairments in assessing a claimant's RFC,
this "does not require the ALJ in every case to 'include' those
limitations in the RFC determination." Aranda v. Berryhill, Case
No. 5:16-CV-00542 (VEB), 2017 WL 3399999, at *6 (C.D. Cal.
Aug. 8, 2017) (citing 20 CFR § 404.1545(e)).

        Where there is objective medical evidence of a
condition and malingering is not found, an ALJ can reject a
claimant's testimony regarding symptoms, only with "specific,

16

clear and convincing reasons for doing so." Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014) (citations omitted). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). The Ninth Circuit has found the ALJ commits legal error when "the ALJ failed to identify the testimony she found not credible [and thereby] did not link that testimony to the particular parts of the record supporting her non-credibility determination." Brown-Hunter, 806 F.3d at 494. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. at 493 (quotation marks and citations omitted).

Here, the ALJ erred by failing to identify the portions of Plaintiff's testimony that were not credible, and failing to provide sufficient reasoning regarding Plaintiff's physical limitations to allow the Court to discern the ALJ's reasoning. While the ALJ made a general statement that Plaintiff's testimony about the intensity, persistence, and limiting effects of these symptoms was not consistent with the medical evidence and other evidence in the record, [id. at 22 (dkt. no. 6-3 at PageID.40),] the ALJ did not link any evidence in the record to Plaintiff's testimony regarding his physical limitations. At step five, the ALJ primarily discussed

17

Plaintiff's mental health conditions, focusing on "claimant's
mental health impairments of major depressive disorder,
generalized anxiety disorder and adjustment disorder[.]" [Id. at
22 (dkt. no. 6-3 at PageID.40).] The ALJ did note she found the
opinions of state consultants Drs. Lau, Matsuno, Yanagi and
Torigoe persuasive, and noted these doctors found no physical
limitations. The ALJ stated these doctors noted Plaintiff was
able to undertake certain activities like travelling to Japan,
attending AA meetings, volunteering and attending church, which
was "consistent with treatment notes concerning his physical
abilities with the claimant often noted with good strength,
normal use of his extremities and a normal gait with indications
he was even going to the gym." [Id. at 25 (dkt. no. 6-3 at
PageID.43).] However, the ALJ summarized Plaintiff's testimony
regarding his mental condition, but did not summarize or refer
to Plaintiff's testimony regarding his physical condition. As
such, the ALJ did not "identify the testimony she found not
credible" and link it to parts of the record. See Brown-Hunter,
806 F.3d at 494. Therefore, the Court cannot adequately review
whether the ALJ's conclusions were supported by substantial
evidence.

      The Commissioner argues that the ALJ discussed
Plaintiff's physical limitations at step two, implying that
there was no need for the ALJ to discuss these limitations

further in step five. [Answering Brief at 2.] Even assuming
arguendo that the ALJ could rely on her discussion of
Plaintiff's physical limitations at step two,[6] the discussion at
step two is insufficient to allow the Court to discern the ALJ's
reasoning regarding the symptoms and limitations that Plaintiff
testified to. Stated differently, even if the Court assumes the
ALJ implicitly discounted Plaintiff's testimony regarding his
physical limitations without identifying the portions of
Plaintiff's testimony, nowhere in the Decision does the ALJ
provide reasoning regarding Plaintiff's ability to lift. While
the ALJ identified evidence concerning some of Plaintiff's
physical symptoms at step two, including his use of extremities,
strength, and gait, which are pertinent to Plaintiff's testimony
about his limited ability to stand and use his right hand, the
ALJ does not address Plaintiff's ability to lift in determining

---

[6] The Court does not determine whether the ALJ may rely on
her discussion at step two, but notes that whether the ALJ may
permissibly rely on the step two analysis turns on the ALJ's
findings and depth of discussion. See, e.g., Hutton v. Astrue,
491 F. App'x 850, 851 (9th Cir. 2012) (finding the ALJ committed
legal error by failing to consider the plaintiff's PTSD, which
the Court found caused mild limitations at step two, in his
assessment of the plaintiff's RFC); Geraldine C. B. v. Kijakazi,
Case No. 21-cv-1750-DEB, 2023 WL 6390432, at *3 (S.D. Cal. Sept.
29, 2023) (noting that while the ALJ found mild limitations in
two mental health functional areas at step two, the Decision
does not explain why the RFC does not contain these
limitations).

Plaintiff's RFC or at step two. See AR at 19-26 (dkt. no. 6-3 at
PageID.37-44).

Accordingly, the ALJ disregarded some of Plaintiff's
testimony without giving a reason why it was not credible. The
Decision does not contain a sufficient explanation grounded in
specific evidence in the record for rejecting Plaintiff's
testimony regarding all of his physical limitations. See Brown-
Hunter, 806 F.3d at 492 (noting that the ALJ's failure to
adequately specify reasons for discrediting a claimant's
testimony "will usually not be harmless").

Remand is warranted because the Court cannot discern
the path of the ALJ's reasoning, and the Court may not
substitute its own speculation as to what the ALJ's analysis
was. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)
(noting the Ninth Circuit is "constrained to review the reasons
the ALJ asserts" and holding the district court erred in
affirming the ALJ's credibility decision on a ground the ALJ did
not invoke in reaching her decision); Lambert v. Saul, 980 F.3d
1266, 1277 (9th Cir. 2020) (finding reversible error because the
ALJ's provision of "high-level" reasons that the claimant's
testimony was not consistent with the evidence was insufficient,
when the ALJ's decision was not detailed enough to "permit
meaningful review"); see also Wright v. Saul, 857 F. App'x 380,
381 (9th Cir. 2021) (finding the ALJ committed legal error,

despite "extensively discuss[ing] the medical record," because
the ALJ did not sufficiently identify what parts of the
plaintiff's testimony were not credible and why); Wade v. Saul,
850 F. App'x 568, 569 (9th Cir. 2021) (finding reversible error
because the ALJ did not give reasons to discredit the
plaintiff's testimony when the ALJ summarized the plaintiff's
testimony about her mental impairments, mentioned her symptoms
improved with medication and treatment, and made "a nonspecific
boilerplate conclusion that her testimony was 'not entirely
consistent' with her medical treatment").

        Further, the Court cannot say that the error was
"inconsequential to the ultimate nondisability determination."
See Lambert, 980 F.3d at 1278 (citation and quotation marks
omitted). As Plaintiff points out, all of the jobs Plaintiff was
found to be able to do would require him to lift and carry
twenty pounds and stand and walk on and off for approximately
six hours. See 20 C.F.R. § 404.1567(b) (noting that "[l]ight
work involves lifting no more than 20 pounds at a time with
frequent lifting or carrying of objects weighing up to 10
pounds" and "requires a good deal of walking or standing");
Titles II and XVI: Determining Capability to Do Other Work — The
Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251
(S.S.A. 1983) (explaining that light work "requires standing or
walking, off and on, for a total of approximately 6 hours of an

21

8-hour workday"); 529.665-010 Fruit-Grader Operator, Dictionary

of Occupational Titles ("DOT") (4th ed. 1991), *available at* 1991

WL 674628 (noting "light work" classification); 429.587-010

Cotton Classer Aide, DOT (4th ed. 1991), *available at* 1991 WL

673463 (noting "light work" classification); 209.667-014 Order

Caller, DOT (4th ed. 1991), *available at* 1991 WL 671807 (noting

"light work" classification); 239.567-010 Office Helper, DOT

(4th ed. 1991), *available at* 1991 WL 672232 (noting "light work"

classification); 209.687-026 Mail Clerk, DOT (4th ed. 1991),

*available at* 1991 WL 671813 (noting "light work"

classification).

Accordingly, the ALJ committed reversible error by

failing to properly evaluate Plaintiff's testimony regarding his

physical limitations. Remand is warranted on this basis.

## II.  **Medical Opinion of Dr. Chinen**

Plaintiff also argues the ALJ did not properly address

the supportability or consistency of Dr. Chinen's medical

opinion, which was not harmless error. Specifically, Plaintiff

argues: (1) findings from mental status exams do not constitute

substantial evidence in order to reject a medical opinion; (2)

the ALJ did not adequately explain why the mental status exams

findings support rejection of Dr. Chinen's opinion; and (3) the

ALJ failed to consider Dr. Chinen's abnormal findings, and

failed to explain how the normal findings in the Decision

22

outweighed the abnormal findings. Plaintiff argues this error
was not harmless because crediting Dr. Chinen's opinion
regarding missing three days of work a month and Plaintiff's
inability to perform at a consistent pace without breaks would
render Plaintiff unemployable. [Opening Brief at 22-25; Reply at
6-10.]

In addition to arguing that the ALJ properly assessed
consistency and supportability and evidence in the medical
record supporting the ALJ's determination, the Commissioner
argues that Dr. Chinen did not support his opinion with
evidence. [Answering Brief at 3-6.] This argument fails because,
when a medical opinion is submitted on a check-box style form,
the opinion may be entitled to substantial weight if supported
by the doctor's treatment notes. See Garrison, 759 F.3d at 1014
n.17.

As to the ALJ's analysis, "the ALJ must assess the
persuasiveness of each medical opinion after considering
specified factors." Stiffler v. O'Malley, 102 F.4th 1102, 1106
(9th Cir. 2024) (citations omitted). The most important factors
an ALJ must consider when evaluating the persuasiveness of a
medical opinion are supportability and consistency. See 20
C.F.R. § 404.1520c(a)-(c). "The more consistent a medical
opinion(s) . . . is with the evidence from other medical sources
and nonmedical sources in the claim, the more persuasive the

23

medical opinion(s) . . . will be." § 404.1520(c)(2).
Supportability, distinct from consistency, involves whether the
medical professional's opinion is supported by her own findings.
"The more relevant the objective medical evidence and supporting
explanations presented by a medical source are to support his or
her medical opinion(s) . . . , the more persuasive the medical
opinions . . . will be." § 404.1520(c)(1).

When rejecting an examining or treating doctor's
opinion as unsupported or inconsistent, the ALJ must provide an
explanation supported by substantial evidence. See Woods v.
Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022). "Ultimately, the
ALJ must articulate how persuasive it finds all of the medical
opinions from each doctor or other source, and explain how it
considered the supportability and consistency factors in
reaching these findings." Stiffler, 102 F.4th at 1106 (citation
and internal quotation marks omitted).

A.    **Consistency Factor**

Here, the ALJ failed to evaluate the consistency
factor in considering all of Dr. Chinen's opinions, specifically
the opinion that Plaintiff would miss more than three days of
work per month. The ALJ stated that Dr. Chinen's opinion of
marked limitation is "inconsistent with the treatment notes from
the claimant's other therapists that noted him as well groomed,
alert, attentive and engaged with a normal affect, appropriate

24

social interactions, goal directed thought processes, normal
speech, normal insight and normal judgment." [Decision, AR at 25
(dkt. no. 6-3 at PageID.43) (citing Exhibits 3F/32, 48-50;
7F/35, 47-48, 139, 275, 280).] The ALJ did not properly explain
why Dr. Chinen's opinion regarding missing three days of work
per month was inconsistent with evidence in the record. The
contradiction between Dr. Chinen's opinion on Plaintiff's
absenteeism and the attributes that the ALJ notes that other
therapists state Plaintiff possesses is not obvious, and more
explanation is required. See Keele v. Kijakazi, CV 21-38-BU-JTJ,
2022 WL 595728, at *4 (D. Mont. Feb. 28, 2022) (finding the ALJ
did not properly address the consistency factor because the ALJ
failed to address a licensed clinical social worker's opinions
that the claimant would be off-task for sixty percent of the
work day and would be absent more than two days per month); see
also Nicole N.-M. v. Comm'r, Soc. Sec. Admin., 649 F. Supp. 3d
1025, 1039 (D. Or. 2022) (noting the "[p]laintiff's pleasant
demeanor and normal cognition at some appointments, in light of
her other symptoms, is not facially inconsistent with [the
family nurse practitioner's] assessment, so the ALJ was required
to explain his reasoning" (citation omitted)); Mal Im K. v.
Comm'r of Soc. Sec., CASE NO. 3:20-cv-05743-BAT, 2021 WL 252237,
at *3 (W.D. Wash. Jan. 26, 2021) (finding an observation that a
plaintiff "was cooperative, well groomed, with intact thought

process and memory" was not facially inconsistent with the
plaintiff's "behavioral limitations such as attendance, or
ability to maintain appropriate behavior and come to work on
time," thus necessitating more of an explanation from the ALJ).

The ALJ's failure to support her reasoning for
rejecting part of Dr. Chinen's opinion with substantial evidence
was legal error. See Keele, 2022 WL 595728, at *4. Because the
VE testified that no jobs would be available if Plaintiff were
absent for more than two days per month, [Hrg. Trans., AR at 67-
68 (dkt. no. 6-3 at PageID.85-86),] and Dr. Chinen opined that
Plaintiff would miss more than three days of work per month,
[Dr. Chinen's 10/4/22 Statement, AR at 553 (dkt. no. 6-8 at
PageID.576); Dr. Chinen's 6/13/23 Statement, AR at 560 (dkt.
no. 6-8 at PageID.583),] the failure to address this portion of
Dr. Chinen's opinion was not harmless. If Dr. Chinen's opinion
regarding Plaintiff's absenteeism were credited, it would
preclude Plaintiff from performing any of the jobs the ALJ found
Plaintiff able to do. Accordingly, the ALJ would not have met
her burden of demonstrating Plaintiff could perform a job that
exists in significant numbers in the national economy.

**B.  Supportability Factor**

The ALJ also failed to properly analyze
supportability. The ALJ's discussion of supportability relies on
Dr. Chinen's mental status exam and general examination

26

findings, specifically, Dr. Chinen's lack of abnormal findings.
The ALJ explained:

> Dr. Chinen's conclusions are not supported by his
> own evaluations which consistently documented an
> absence of abnormal mental status findings and
> noted the claimant to have a normal appearance,
> good mood, full affect, adequate insight,
> adequate judgment, logical thought processes,
> intact memory, normal attention, normal
> concentration and adequate fund of knowledge with
> him noting only that the claimant reported an up
> and down mood or complaints of anxiety at times
> (Exhibit 1F/3, 6-7, 10; 3F/39-41; 7F/56, 72,
> 250).

[Decision, AR at 25 (dkt. no. 6-3 at PageID.43).]

The mental status exam and general examination
findings upon which the ALJ relied in finding Dr. Chinen's
opinion that Plaintiff had marked limitations and would miss
more than three days per month unpersuasive do not constitute
substantial evidence.

First, mental status exams may be of limited relevance
to assessing mental health disorders, where a "snapshot" in time
fails to capture the full extent of mental health symptoms. A
"mental status examination[] is a mere snapshot of [the
p]laintiff's functioning on a particular day[.]" Harris v.
Berryhill, Case No. 2:17-cv-02741-RFB-BNW, 2019 WL 2068469, at
*3 (D. Nev. May 10, 2019). For example, a plaintiff "having a
composed and 'normal' demeanor during doctor visits does not
preclude her from experiencing anxiety and depression in other

27

contexts." Moody v. Berryhill, Case No. 16-cv-03646-JSC, 2017 WL
3215353, at *10 (N.D. Cal. July 28, 2017). This is particularly
pertinent here, when Dr. Chinen noted during Plaintiff's period
of disability that Plaintiff experienced "up and down" mental
health symptoms. [Exh. 7F, AR at 615 (dkt. no. 6-9 at
PageID.639) (Chief Complaint section of Dr. Chinen's progress
note for a 6/22/23 telephonic visit).] Accordingly, the fact
that Plaintiff exhibited a "good mood" or "normal appearance" on
a particular day, see Decision, AR at 25 (dkt. no. 6-3 at
PageID.43), does not indicate that Plaintiff will be able to
attend work with less than three absences a month.

        Further, the ALJ failed to explain how the mental
status exam findings undermined Dr. Chinen's opinion regarding
how many days Plaintiff would miss work due to his impairments.
The ALJ does not explain how the mental status exam findings
undercut Plaintiff's panic attacks, a major symptom of
Plaintiff's major depressive disorder and generalized anxiety
disorder that Dr. Chinen noted. Plaintiff's panic attacks appear
to give rise to marked limitations and likely absences. See Dr.
Chinen's 6/13/23 Statement, AR at 563 (dkt. no. 6-8 at
PageID.586) (noting Plaintiff "is still having many issues" with
his mental health diagnoses, including panic attacks); Boeche v.
Kijakazi, Case No. 23CV918-RBM(BLM), 2024 WL 3430576, at *8
(S.D. Cal. July 15, 2024) (noting the ALJ erred by failing to

explain how "normal" mental status examinations were
inconsistent with the plaintiff's sudden-onset, limiting panic
attacks, which the doctor identified as a reason for the
plaintiff's limitations).

Further, the reliability of significant portions of
the examination findings upon which the ALJ did rely is suspect.
Because some of the examination findings that the ALJ refers to
occurred over telephone appointments, see, e.g., Exh. 1F, AR at
293 (dkt. no. 6-8 at PageID.316) (portion of Dr. Chinen's
5/23/22 progress note); Exh. 3F, AR at 539 (dkt. no. 6-8 at
PageID.562) (portion of Dr. Chinen's 6/23/22 progress note),
these observations indicating "normal appearance" and "full
affect" seem difficult, if not impossible, to obtain via a
telephone call. See Timothy C. v. O'Malley, Case No. 3:23-cv-
01076-JES-AHG, 2024 WL 3691692, at *9 (S.D. Cal. Aug. 6, 2024)
(noting that portions of the treatment notes were not reliable,
when a mental status exam assessed appearance and eye contact
via a telephone call).[7] In fact, Dr. Chinen's notes indicate that
that portion of the examination was to be disregarded due to the
telephonic nature of the appointment. See, e.g., Exh. 1F, AR at
293 (dkt. no. 6-8 at PageID.316) (portion of Dr. Chinen's
5/23/22 progress note stating "Examination: N/A over phone" and

---

[7] The district judge adopted the report and recommendation.
Timothy C., 2024 WL 3929877 (S.D. Cal. Aug. 23, 2024).

29

proceeding to list observations about "general appearance" such
as "good hygiene, appropriately dressed[.]").

Finally, although the ALJ detailed Dr. Chinen's
progress notes, see Decision, AR at 23-25 (dkt. no. 6-3 at
PageID.41-43), the ALJ appears to ignore significant portions of
these progress notes in her consistency analysis. See id. at 25
(dkt. no. 6-3 at PageID.43). In her consistency analysis, the
ALJ failed to address the multiple progress notes by Dr. Chinen
that reported Plaintiff's stress, anxiety, and panic attacks.
See Exh. 7F, AR at 614-15 (dkt. no. 6-9 at PageID.638-39)
(portion of Dr. Chinen's 6/22/23 progress note, noting he was
referred for treatment of anxiety, and he continued to
experience stress); id. at 656 (dkt. no. 6-9 at PageID.680)
(portion of Dr. Chinen's 3/10/23 progress note, noting Plaintiff
was "having some issues," had a spike in stress, and requested
new medication to cope with panic attacks); id. at 685 (dkt.
no. 6-9 at PageID.709) (portion of Dr. Chinen's 1/17/23 progress
note, noting anxiety over being subpoenaed); id. at 704 (dkt.
no. 6-9 at PageID.728) (portion of Dr. Chinen's 12/15/22
progress note, noting a decrease in the intensity and frequency
of panic attacks over the past month, reporting two episodes of
increased anxiety, and a panic attack during a Christmas parade,
and noting disassociative symptoms during increased anxiety);
id. at 749 (dkt. no. 6-9 at PageID.773) (portion of Dr. Chinen's

10/14/22 progress note, noting "up and down" mood, and
reporting recent panic-like symptoms).

While some of the normal mental status exam findings
the ALJ cited support her conclusion as to the persuasiveness of
Dr. Chinen's opinion, the ALJ erred by focusing solely on that
evidence, and failing to adequately discuss or refer to the
abnormal findings and documented symptoms in Dr. Chinen's
progress reports. See, e.g., Scholes v. O'Malley, Case No. 24-
cv-00029-DKW-KJM, 2024 WL 3429415, at *5 (D. Hawai`i July 16,
2024) (noting the ALJ's consideration of normal findings cherry-
picked the medical record and constituted legal error); Perez v.
Saul, 855 F. App'x 365, 366 (9th Cir. 2021) ("These treatment
notes do not provide specific and legitimate reasons for
discounting [the treating gynecologist's] opinion because these
cherry-picked statements do not reflect the diagnostic record as
a whole."); William B. v. Saul, No. 2:19-CV-00261-JTR, 2020 WL
4318755, at *3 (E.D. Wash. July 27, 2020) ("Simply because
Plaintiff did well on portions of the mental status exam does
not negate the other abnormal findings, as well as [the
doctor's] professional assessments."). "ALJs may not cherry-pick
from mixed results to support a denial of benefits, especially
in the context of mental illnesses which may exhibit
fluctuations in symptoms such that any single notation that a
patient is feeling better or has had a good day does not imply

that the condition has been treated." <u>Leah K. v. Comm'r of Soc.</u>
<u>Sec.</u>, 616 F. Supp. 3d 1099, 1107 (D. Or. 2022) (citation and
internal quotation marks omitted). This constitutes legal error.
<u>See</u> <u>Scholes</u>, 2024 WL 3429415, at *5.

Accordingly, the ALJ committed legal error in
assessing supportability, and failed to provide an explanation
supported by substantial evidence in finding certain opinions of
Dr. Chinen unpersuasive. <u>See</u> <u>Woods</u>, 32 F.4th at 792. As
explained above, this error is not harmless because Plaintiff
would have been found unemployable given the VE's testimony that
absenteeism of more than two days per month renders an
individual unemployable.

**III. <u>Remand and Other Arguments</u>**

In sum, the ALJ erred by failing to properly evaluate
Plaintiff's testimony regarding his physical limitations, and by
failing to properly evaluate the consistency and supportability
of Dr. Chinen's medical opinions. As detailed above, these are
reversible errors warranting remand.

The Court declines to address Plaintiff's remaining
arguments at this time. <u>See</u> <u>Hiler v. Astrue</u>, 687 F.3d 1208, 1212
(9th Cir. 2012) (remanding to the ALJ for one reason and

declining to reach an alternative ground).[8] On remand, the ALJ should properly evaluate Plaintiff's testimony regarding his physical limitations, and properly evaluate Dr. Chinen's medical opinion, as discussed above. Because Plaintiff may be granted benefits on remand, or further proceedings could shed light on the merits of Plaintiff's other arguments, the Court does not consider Plaintiff's other arguments at this time. Plaintiff is not precluded from raising these arguments again in a potential future appeal.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's appeal from the Administrative Law Judge's January 4, 2024 Decision is HEREBY GRANTED IN PART insofar as the ALJ's Decision is REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with the instant Order. There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close the case on **November 29, 2024.**

IT IS SO ORDERED.

---

[8] <u>Hiler</u> was superseded by regulation on other grounds. <u>See, e.g.</u>, <u>Daniel O. v. O'Malley</u>, Case No. 23-cv-01596-BEN-JLB, 2024 WL 3597110, at *5 (S.D. Cal. July 31, 2024), *report and recommendation adopted*, 2024 WL 3883505 (Aug. 19, 2024).

DATED AT HONOLULU, HAWAII, November 13, 2024.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

BENJERMIN HECKER VS. MARTIN O'MALLEY, COMMISSIONER OF SOCIAL
SECURITY; CV 24-00169 LEK-RT; ORDER GRANTING IN PART PLAINTIFF'S
APPEAL; REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION; AND
REMANDING THE CASE FOR FURTHER PROCEEDINGS